# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

DEBRA B.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 3:17-cv-05937-TLF

ORDER REVERSING AND REMANDING FOR AWARD OF BENEFITS

Debra B. has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons below, the undersigned reverses defendant's decision and remands for defendant to award benefits.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits in December 2014 and an application for supplemental security income in October 2016. Dkt. 8, Administrative Record (AR) 37. She alleged in both that she became disabled as of November 1, 2013. *Id.* Both applications were denied at the initial and reconsideration levels of administrative review. *Id.* A hearing was held before an administrative law judge (ALJ). *Id.* Plaintiff appeared and testified, as did a vocational expert. AR 909-37. In a written decision, the ALJ determined that there are jobs existing in significant numbers in the national economy that plaintiff can perform, and

therefore that she is not disabled. AR 34-60. Plaintiff filed a complaint with this Court, seeking reversal and remand for an award of benefits.

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576).

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the ALJ's decision for a reason the ALJ did not rely upon. *Id.* In its review, the Court considers only the reasons the ALJ identified. *Id.*

"If the evidence admits of more than one rational interpretation," the Court must uphold that decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Id*.

## ISSUES FOR REVEW

1. Did the ALJ err in assessing the medical opinion evidence?
2. Did the ALJ err in discounting plaintiff's subjective symptom testimony?
3. Did the ALJ err in failing to address the lay testimony?

ORDER REVERSING AND REMANDING FOR AWARD OF BENEFITS - 2

4. Did the ALJ err in finding at step three that plaintiff's conditions do not meet or medically equal a disability listing?

5. Is plaintiff entitled to an order to award benefits on remand?

DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. At step four of that process, the ALJ assesses a claimant's residual functional capacity (RFC) to determine whether the claimant can perform past relevant work, and, if necessary, at step five to determine whether the claimant can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). At step five, the Commissioner has the burden of proof, which the Commissioner can meet by showing a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

I. The ALJ's Consideration of Medical Opinion Evidence

First, plaintiff challenges the ALJ's decision, in assessing plaintiff's RFC, to discount each of her treating providers' opinions about her mental and physical limitations. Plaintiff is correct, as the ALJ failed to give adequate and supported reasons to discount several of those opinions.

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id.*

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). On the other hand, an ALJ need not accept the opinion of a treating physician if that opinion is brief, conclusory, and inadequately supported by medical findings or by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

Although an ALJ must thus provide at least specific and legitimate reasons to reject the opinion of an "acceptable medical source" who treated or examined the claimant, "acceptable" sources include "only licensed physicians and certain other qualified specialists." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R. §§ 404.1513(a), 416.913(a) (versions effective September 3, 2013 to March 26, 2017). Relevant to this case, licensed social workers and occupational therapists are not "acceptable medical sources" under the regulations in effect at the time of plaintiff's application. *See* 20 C.F.R. § 404.1513(d); *McGee v. Astrue*, 368 F. App'x 825, 828 (9th Cir. 2010). Because these sources "are not entitled to the same deference" as acceptable medical sources, the ALJ needs to give only "reasons germane" to the source to discount its testimony. *Molina*, 674 F.3d at 1111 (citing 20 C.F.R. § 404.1527; Social Security Ruling (SSR) 06–03p).

A. <u>Treating Physician Anthony Anderson, M.D.</u>

First, the ALJ failed to give specific and legitimate reasons to reject the opinions of plaintiff's treating physician, Dr. Anderson.[1]

Dr. Anderson was plaintiff's treating physician beginning in June 2014. AR 1252. He completed an evaluation of plaintiff's physical functioning in December 2014. *Id.* He listed

---

[1] Because the opinions of non-examining state-agency medical consultants contradict each of the treating and examining medical sources' opinions in this case, the ALJ was required to give reasons that are specific and legitimate—not clear and convincing—to reject the treating and examining sources' opinions. *See Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006); AR 947-51, 964-68.

diagnoses of chronic back pain, multilevel disc disease, and several other conditions. *Id.* He opined that plaintiff could sit for 2-3 hours and stand or walk for 4-5 hours in an eight hour workday. *Id.* He indicated that plaintiff would need to be able to alternate sitting and standing at will throughout the day. *Id.* He indicated that plaintiff could lift or carry 0-5 pounds frequently, 6-20 pounds occasionally, and never more than 20 pounds. *Id.* And he opined that plaintiff could never stoop, kneel, or crouch. *Id.*

Dr. Anderson stated similar opinions in treatment notes from March 2015. This time he indicated plaintiff is limited to 1-2 hours sitting, 3 hours standing, and 2-3 hours walking in a day. AR 1481. He added that plaintiff needed to "wear a brace intermittently for carpal tunnel and for tennis elbow" and that plaintiff's limiting conditions were "unchanged and not expected to change." *Id.*

The ALJ wrote that he gave Dr. Anderson's December 2014 opinion "some weight." AR 51. As discussed below, however, the RFC shows that the ALJ did not credit most of the limitations Dr. Anderson found. *See* AR 43. And the ALJ failed to give specific, legitimate, and supported reasons to reject Dr. Anderson's opinions.

The ALJ first stated that Dr. Anderson's opinion "reflects a capacity for a range of light work similar to what was reflected in the above [RFC]." AR 51. He added that this was consistent with clinical findings on plaintiff's gait and ranges of motion in her joints. *Id.* (citing AR 1394, 1450, 1654). The Commissioner contends that the ALJ incorporated the limitations Dr. Anderson found, including that plaintiff can lift and carry no more than 20 pounds and needs "a sit/stand option." Dkt. 19, p. 3.

The ALJ and Commissioner are incorrect; the record shows that the ALJ did not incorporate limitations similar to those found by Dr. Anderson. Contrary to the Commissioner's

assertion, the RFC does not include a "sit/stand" option. *See* AR 43. If the Commissioner is referring to the RFC's provision that plaintiff sit for a portion of the workday and stand for a portion of the workday (6 hours each), the Commissioner is mistaken. Such a limitation would not accommodate plaintiff's need to alternate sitting and standing "at will" throughout the day. *See* AR 1252. Accordingly, the ALJ's finding that the RFC accounts for Dr. Anderson's opinions is unsupported.

Second, both the ALJ and the Commissioner point out that plaintiff's treatment records indicate her gait and ranges of motion were consistently within normal limits. *See* AR 1394, 1450, 1654. But the ALJ apparently "cherry picked" these normal-seeming clinical findings while ignoring their context. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998). The findings the ALJ selected were made at treatment visits for conditions other than plaintiff's musculoskeletal problems. *See* AR 1391-94 (visit for urinary and gastrointestinal problems), 1448-50 (visit to discuss abdominal ultrasound).

Although the ALJ selectively cited to pages containing range-of-motion findings by plaintiff's occupational therapist, Ms. Milasich, the ALJ ignored the detailed positional testing Ms. Milasich performed in the same evaluation. That testing supported the limitations Dr. Anderson found in plaintiff's ability to sit, stand, walk, and make other movements. *See* AR 1655. The ALJ also focused on the gait and range-of-motion tests to the exclusion of the results of cervical- and lumbar-spine imaging. Those results showed significant abnormalities, which the ALJ acknowledged elsewhere in his decision. AR 46-47 (concluding that lumbar imaging results "support[ ] finding the claimant's lumbar impairment is severe. . ."); *see* AR 1751 (explanation by Dr. Campbell that "X-rays from July 2015 showed multilevel lumbar disc

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 6

degeneration and MRI of the cervical spine in April 2016 showed multilevel disc degeneration");
AR 1516, 1663, 1671, 1792, 1833 (imaging results).

Third, the ALJ found that plaintiff's "activities suggest she is more active than found by Dr. Anderson." AR 51. He cited indications that plaintiff traveled "numerous times" and "reported moderate and regular exercise." AR 51.

A claimant's ability to perform activities like traveling and exercising can be a valid reason to discount debilitating limitations inconsistent with those activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). For the ALJ to rely on such activities, though, the ALJ must find that the plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id.*

The ALJ made no such finding here, and the record would not support one. The records the ALJ cited indicate that in 2015 and 2016: plaintiff used a three-step ladder to paint, AR 1513; she went to Idaho to visit her family, AR 1557; she planted several plants, AR 1563; she visited her ailing father in Colorado, AR 1720; she reported a "[m]oderate activity level" and exercised daily by walking or using a treadmill, AR 1753, 1865; and she joined a gym, AR 1801.

The ALJ's decision, and the record, lack further details about these activities that would demonstrate that plaintiff can "spend a substantial part of [her] day" performing "physical functions that are transferable to a work setting." *Morgan*, 169 F.3d at 600. Nor did the ALJ explain how these activities are actually inconsistent with Dr. Anderson's opinions that, among other limitations, plaintiff cannot sit for more than 1-2 hours per day or stand and walk for more than 2-5 hours per day, that she cannot stoop, kneel, or crouch, and that she must be able to

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 7

switch at will between sitting and standing. AR 1252, 1481. The ALJ thus improperly relied on plaintiff's activities to reject her treating physician's opinions.

B. <u>Treating "Other" Medical Source Julie Milasich, OTR/L</u>

The ALJ also failed to give adequate and supported reasons to discount an opinion from Ms. Milasich, plaintiff's occupational therapist.

Ms. Milasich performed a functional evaluation in April 2016 and added to that evaluation in October 2016. AR 1652-56, 1744. She tested plaintiff's ranges of motion, her ability to push, pull, lift, and carry, and her ability to sit, stand, walk, climb, squat/kneel, stoop/bend, reach, and handle/grasp/finger. AR 1654-56. She found, among other limitations, that plaintiff showed an ability to sit up to 30 minutes at a time and 2-3 hours per 8-hour day, to stand 1530 minutes at a time and 2 hours in an 8-hour day, to walk 15-30 minutes at a time and 1 hour in an 8-hour day, to climb stairs in an emergency but not as part of regular work, and to squat rarely but not kneel, stoop, or bend. AR 1655. She concluded that plaintiff was functioning at the sedentary exertional level but "does not demonstrate the tolerances for sustained sitting, standing and walking to be able to perform even sedentary level work on a full-time basis." AR 1656.

The ALJ briefly dismissed Ms. Milasich's opinions, reasoning that they are not consistent with clinical findings that show plaintiff has a nonantalgic gait and "is much more active than she asserts." AR 52. The ALJ cited the same records regarding plaintiff's activities that he cited in rejecting Dr. Anderson's opinions. *See* AR 1557, 1720 (travel); AR 1563 (gardening); AR 1753, 1801, 1865 (moderate activity, exercise, gym membership).

Although Ms. Milasich was not an "acceptable medical source," she was a treating "other medical" source. *See* 20 C.F.R. § 404.1513(a), (d)(1); *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010); SSR 06–3p. The ALJ was required to give

germane reasons to discount Ms. Milasich's opinions, and those reasons must be supported by substantial evidence. *See Lewis v. Apfel*, 236 F.3d 503, 510-12 (9th Cir. 2001).

The ALJ's reasoning fails to meet this standard because substantial evidence does not support it. As noted above, the ALJ's citation of plaintiff's activities was too vague to justify rejecting a treating source opinion. Moreover, the ALJ's citation of clinical findings was again selective, isolating cursory musculoskeletal findings at treatment visits for urinary and gastrointestinal problems. *See* AR 1394, 1404, 1450, 1513. This error is particularly relevant with respect to Ms. Milasich's opinion, because the most thorough clinical findings in the record came from Ms. Milasich herself. She performed testing on plaintiff's range of motion, materials handling, and ability to perform different positions, including sitting, standing, walking, stair climbing, squatting/kneeling, stooping/bending, and reaching. AR 1654-56. Ms. Milasich's findings in these areas were consistent with Dr. Anderson's, and more detailed. *Id.* Thus, the ALJ's finding that Ms. Milasich's opinion was inconsistent with clinical findings was not supported. The ALJ erred in rejecting Ms. Milasich's opinions.

If credited, Dr. Anderson and Ms. Milasich's opinions would have necessarily changed the assessment regarding physical limitations in the RFC. Because the ALJ failed to give adequate, supported reasons to reject those opinions, the ALJ's decision must be reversed. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Accordingly, the Court does not reach whether the ALJ also erred in discounting the other opinions on plaintiff's physical limitations.

C.      <u>Treating "Other" Medical Source Alessandra DelSignore, MSW</u>

The ALJ also erred in rejecting opinions from treating providers as to plaintiff's mental health.

Ms. DelSignore evaluated plaintiff in December 2013 and found that her mental-health impairments combined with job pressure and environmental distractions at her current job would

prevent her from returning to work. AR 1855-56. She found that plaintiff's impairments would last for three months. *Id.* She evaluated plaintiff again in March 2014 and found that she would not be able to work for another three months. AR 1868-69. Finally, Ms. DelSignore opined in an October 2014 letter that plaintiff had not made significant progress and had not been able to work since September 1, 2014. AR 1870.

Ms. DelSignore based her opinions on her experience in treating plaintiff and on mental-status examinations. *See* AR 1855-58, 1868-69. In December 2013, Ms. DelSignore found that plaintiff had moderately impaired attention, concentration, and memory (the latter two based on plaintiff's self-reports), as well as a tangential thought process. AR 1857.

In March 2014, Ms. DelSignore made fewer abnormal findings but still observed mild impairments to plaintiff's attention and concentration. AR 1868. At both evaluations, she observed that plaintiff has "high emotional reactivity" and "cries easily;" and at the later exam she noted that plaintiff's childhood memories were increasing her anxiety and feelings of helplessness. AR 1858-59, 1868-69.

The ALJ rejected Ms. DelSignore's opinions because "the medical evidence of record does not support these extreme limitations." AR 49. For support, he noted certain cognitive findings on mental status examinations: that plaintiff could recall two of three items after a delay, complete serial seven calculations with one error, and could spell "world" forward and backward. *Id.* He also explained that even if plaintiff could not return to her past work, "the regulations require that [she] be unable to perform any work that exists in significant numbers within the national economy." *Id.*

Neither of these is a germane and supported reason to dismiss Ms. DelSignore's opinions. The ALJ could not justify rejecting Ms. DelSignore's opinions by pointing to three unremarkable

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 10

findings about plaintiff's cognitive performance on a single mental-status examination. An ALJ may not cherry pick and reinterpret examination findings this way. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (ALJs "must be careful not to succumb to the temptation to play doctor").

And the findings the ALJ cited are not germane to Ms. DelSignore's opinions. Ms. DelSignore's letters state that she based her opinions not on plaintiff's cognitive abilities but on symptoms of depression and anxiety—specifically, plaintiff's "high emotional reactivity" and inability to handle stress. AR 1859, 1869, 1870. (The Court notes that the ALJ relied on the same isolated findings from a psychological evaluation by Christina Rasmussen, Ph.D., to accept two state-agency reviewing opinions and to reject the treating opinions of Greer Currison and Dr. Campbell in their entirety. *See* AR 49. The ALJ's use of those findings appears to be based on his lay interpretation of them, as no treating or examining source, including Dr. Rasmussen, interpreted those findings as undermining plaintiff's reported symptoms. *See* AR 1383.)

The ALJ also erred in rejecting Ms. DelSignore's opinions by observing that "the regulations require that [a claimant] be unable to perform any work that exists in significant numbers within the national economy." AR 49. This reason is not germane to Ms. DelSignore's opinions. To be entitled to weight, a medical source is not required to opine as to a claimant's ability to perform jobs in the national economy. Indeed, if Ms. DelSignore had done so the ALJ could, with adequate support, discount the opinion as being on an issue reserved to the Commissioner. *See Reddick*, 157 F.3d at 725. Instead, the ALJ was required to consider Ms. DelSignore's specific opinions about plaintiff's functional limitations—including her high emotional reactivity and poor concentration—in determining whether she is disabled. *See* 20

C.F.R. 404.1527(f). Because the ALJ failed to offer any valid reason for not doing so, he erred in rejecting Ms. DelSignore's opinions.

D. <u>Treating Physician Constance Blair Campbell, M.D., and Treating "Other" Medical Source Greer Currison</u>

Finally, the ALJ also erred in rejecting the opinions of plaintiff's treating physician, Dr. Campbell, and her mental-health therapist, Greer Currison.

Dr. Campbell and Ms. Currison filled out a combined three evaluations in three days in August 2016. AR 1624, 1627, 1630. Ms. Currison filled out the first herself, both providers filled out the second together, and Dr. Campbell filled out the third. *Id.* Because the latter two forms are more substantial than the first while reflecting similar opinions, only the latter two forms are discussed below.

In mental status examinations, Dr. Campbell and Ms. Currison found plaintiff's thought process to be tangential and show flight of ideas, that her psychomotor activity showed agitation, and that she had moderate cognitive impairments. AR 1627, 1630. They attributed plaintiff's chronic condition to a history of trauma and grief. *Id.*

On both forms, Dr. Campbell and Ms. Currison observed that plaintiff had impairments due to depression, anxiety, and post-traumatic stress disorder (PTSD). AR 1628, 1631. Dr. Campbell added that plaintiff is "unable to complete basic tasks of interpersonal or group activities." AR 1628.

In a check-box form, the providers indicated that plaintiff has minimal or no ability to direct, control, or plan others' activities, to perform repetitive or short-cycled work,to influence people in their opinions, attitudes, and judgments, to perform a variety of duties, to work alone or apart in physical isolation, to perform under stress, to attain set limits, tolerances, and standards,

to work under instructions, to deal with people, and to make judgments and decisions. AR 1628, 1631.

The ALJ rejected these opinions because he found that the "extreme limitations" they contain "are not supported by the overall medical evidence of record." AR 51. The ALJ found (as an example) that treatment notes do not show the degree of limitation in attention and concentration that would indicate an "inability to perform repetitive or short cycled work." *Id.* The ALJ also cited the same findings that he found contradicted Ms. DelSignore's opinions—that plaintiff could recall two of three items after a delay, complete serial seven calculations with one error, and could spell "world" forward and backward. *Id.* He again found that these results "indicate[ ] greater ability" than plaintiff's providers found. *Id.*

The ALJ made several errors in this analysis:

First, the ALJ again improperly reinterpreted mental-status exam results differently from every provider to treat plaintiff, substituting his own medical analysis for the medical opinions of each treating provider. *See Schmidt*, 914 F.2d at 118.

Second, the ALJ conflated cognitive mental-status-exam findings with the signs of emotional functioning that Ms. Currison and Dr. Campbell, like Ms. DelSignore, expressly relied on in reaching their opinions, and which they attributed to plaintiff's depression, anxiety, and PTSD. *See* AR 1628, 1631.

Third, the limitation the ALJ identified as inconsistent with the record—"[p]erforming repetitive or short-cycled work"—is just one of ten types of activity that Ms. Currison and Dr. Campbell found plaintiff would have either minimal ability or no ability to perform. AR 1628, 1631. The ALJ identified no treatment notes that contradict the limitations Ms. Currison and Dr. Campbell found in the other nine areas in which they found plaintiff to be severely limited.

The ALJ's other reason for rejecting Ms. Currison and Dr. Campbell's opinions is that, although they made their assessments one day apart, the assessments show different limitations without explaining the differences. This is not a specific and legitimate reason to reject these opinions. If the forms describe different limitations, the differences are extremely slight: On the first form (evidently completed by Ms. Currison then signed by both her and Dr. Campbell, AR 1630-32), plaintiff was noted to have "minimal ability" to perform effectively under stress or deal with people. AR 1631. In the second form (completed by Dr. Campbell), plaintiff was noted to have "no ability" in those two areas. AR 1628. The forms define "minimal ability" as 0 to 33 percent of the day. *Id.* As the "minimal ability" category includes functioning of as little as 0 percent, the two form opinions are not necessarily inconsistent. More importantly, in the other ten areas of functioning, the findings in the evaluations are identical. AR 1628, 1631. This minor inconsistency in 2 of the 12 categories of functioning cannot justify rejecting these treating opinions in their entirety.

Because the ALJ erred by rejecting the opinions of plaintiff's treating mental-health providers, the RFC was incomplete with respect to plaintiff's mental-health limitations, as well.

II. The ALJ's Consideration of Plaintiff's Testimony

The ALJ also erred in discounting plaintiff's subjective symptom testimony.

In weighing a plaintiff's testimony, an ALJ must use a two-step process. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of

the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

Here, plaintiff testified about symptoms of PTSD, including that she mostly stays home because she does not like to be around people. AR 921-22. She goes grocery shopping once or twice a week. AR 922. Friends visit to help her with housework or go shopping with her. *Id.* She gets help on yard work. *Id.* She only drives to the doctor and the store. *Id.* She takes medications that sometimes make her tired or constipated. AR 924-25.

Plaintiff also testified that she has body pain that began at her last job, and that her doctor suggested it was fibromyalgia. AR 924. She can stand for only 15 or 20 minutes and sit for 25 minutes at a time, and since a recent shoulder surgery she is limited in lifting and carrying. AR 925. She has trouble grasping things due to her carpal-tunnel syndrome. *Id.* She is unable to "think right" and has a poor memory. AR 926. She has a history of being absent at work. AR 926-27.

In a function report, plaintiff wrote that she is limited at work by problems with memory, following instructions, completing tasks, concentrating, and handling stress, and, physically, by pain and weakness in postural tasks like lifting, squatting, bending, and standing. She lives alone and cares for pets; she watches television, reads, and colors. She prepares simple meals and does chores. She shops at off-peak times and leans on her cart for support. She grooms herself less than before her disability began. She sometimes cares for her mother. She socializes weekly with her family, boyfriend, and friends. She generally avoids others, though, and she isolates herself due to anxiety. AR 1121-29.

The ALJ discounted this testimony, but he failed give specific reasons for doing so—let alone clear and convincing ones, supported by the record. Specifically, the ALJ failed to

"identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

Instead, the ALJ undertook a review of plaintiff's treatment records and found they "do not support further limitations than described in the above [RFC]." AR 44-46 (mental conditions), 46-48 (physical conditions). The ALJ's error in this analysis is similar to his error in analyzing the medical opinions, discussed above, and to the error the Ninth Circuit noted in *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). In *Revels*, as here, the ALJ found that the plaintiff's "testimony was not credible 'to the extent [it was] inconsistent with the . . . [RFC].'" *Id.* The court found that this is "a backward approach" to weighing a claimant's subjective testimony, because "an ALJ must take into account a claimant's symptom testimony when determining the RFC." *Id.* Where, as here, the ALJ arrives at an RFC based on his or her analysis of the medical record, then compares the claimant's testimony to that RFC for consistency, the ALJ errs. *See id.*

In addition, the record contradicts several of the findings the ALJ depended on in rejecting plaintiff's testimony.

First, the ALJ found that, while "the objective evidence supports limitations in reaching overhead" (the RFC provides that plaintiff can do so occasionally, AR 43)—"the lack of evidence of radicular symptoms" prevented him from finding greater limitations. AR 46. But the evidence belies this finding, as plaintiff's treating doctors noted radicular symptoms at multiple visits. *See, e.g.*, AR 1681-83, 1689.

Second, after reviewing the extensive abnormal findings in imaging tests on plaintiff's cervical spine, the ALJ found that they "support[ ] some limitations in lifting and carrying." He

ORDER REVERSING AND REMANDING FOR AWARD
OF BENEFITS - 16

did not mention, however, the limitations plaintiff reported in sitting, standing, walking, kneeling, and crouching, which those imaging tests would also seem to support. AR 46.

And third, after reviewing similarly severe findings from imaging of plaintiff's lumbar spine, the ALJ concluded that plaintiff's "lumbar impairment is severe and supports limitations in exertional and postural activities." But the ALJ offered no explanation of how this comports with the RFC, which states that plaintiff can stand or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and "occasionally crawl, kneel, crouch, stoop, balance, and climb ramps or stairs." AR 43.

The Commissioner incorrectly asserts that the ALJ gave a valid and supported reason to discount plaintiff's testimony by finding that her activities show limitations consistent with the RFC. The ALJ noted the same activities that he found contradicted medical opinions on plaintiff's limitations—getting regular exercise, including walking; joining a gym; reporting a "moderate activity level;" painting from a three-step ladder (which plaintiff injured herself falling from); gardening; and visiting family in Idaho and Colorado. AR 47-48.

The ALJ does not explain, and the record does not reflect, any details that could support a finding that these activities were so demanding that they contradict plaintiff's testimony about her limitations. The activities the ALJ cited are not the type of physically, mentally, or emotionally demanding activities that could reasonably be found to contradict plaintiff's statements about severe limitations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("We agree with Orn that reading, watching television, and coloring in coloring books are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace."). Nor would the record support findings that plaintiff's activities are

transferable to a work setting and that plaintiff spends a "substantial part of her day" on them, even if the ALJ had made such findings. *See Smolen*, 80 F.3d at 1284 & n.7.

III. Lay Testimony and Step-Three Analysis

As discussed below, the Court concludes that the ALJ's errors in considering both plaintiff's testimony and the medical opinion evidence, together with the record in this case, warrant remand for an award of benefits. Therefore, the Court does not address the plaintiff's arguments that the ALJ also erred in considering lay-witness testimony and in analyzing plaintiff's conditions under the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. A, App. 1. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach this alternative ground for remand.").

IV. Remand for Award of Benefits

Plaintiff argues that this case should be remanded for an award of benefits. The Commissioner responds that if the Court decides to reverse the ALJ's decision, it should remand for further proceedings because the state reviewing doctors' opinions present an "evidentiary conflict." Dkt. 19, pp. 16-17.

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berry hill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each elements is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

Here, the Court concludes that each of the credit-as-true factors is satisfied and remand for the calculation and award of benefits is warranted.

First, the record has been fully developed. *See Revels*, 874 F.3d at 668-69. The record is nearly 1900 pages long and includes over 500 pages of treatment notes from 2013 to 2016. It contains a psychological evaluation and functional capacity assessments from seven treating providers and two nonexamining doctors. It also includes plaintiff's testimony about the severity of her symptoms and a function report her representative filled out for her. The ALJ acknowledged at the hearing that, if credited, the opinion of plaintiff's occupational therapist, Ms. Milasich, would prevent plaintiff from performing even sedentary work. *See* AR 933. The vocational expert testified that a person who is off task greater than 10 percent of the day or has two or more absences (per month, presumably) will not be able to maintain competitive employment. AR 933.

The other two credit-as-true factors are also satisfied. The ALJ rejected nearly every opinion from a medical source who examined or treated plaintiff. For the opinions the ALJ gave "some weight" to, he improperly did so only to the extent those opinions comported with the RFC that he independently assessed. The ALJ failed to provide legally sufficient reasons to

reject the medical opinions of plaintiff's two treating physicians, her treating occupational therapist, her treating mental-health therapist, and her counselor. The ALJ also failed to provide valid and supported reasons to reject plaintiff's testimony about her symptoms.

If credited as true, Ms. Milasich, Ms. Currison, and Dr. Campbell's opinions establish that plaintiff is disabled, because Ms. Milasich opined that plaintiff cannot perform even sedentary work and Ms. Currison and Dr. Campbell opined that plaintiff had minimal or no ability to perform most work activities that depend on mental health.

Further, there is no "serious doubt" that, based on "the record as a whole," plaintiff is in fact disabled. Her impairments of degenerative disc disease, depression, anxiety, and PTSD have been repeatedly substantiated by each of her physical and mental-health providers, as well as her own testimony and self-reports.

Accordingly, the ALJ's decision is reversed and the case is remanded to the ALJ for the calculation and award of benefits.

## CONCLUSION

Based on the foregoing discussion, the Court finds numerous errors in the ALJ's determination that plaintiff was not disabled. Further administrative proceedings would not be useful or necessary. Defendant's decision to deny benefits is therefore REVERSED and the case is remanded to the Commissioner to award benefits to plaintiff.

Dated this 27th day of December, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge